88 Cal.Rptr.2d 88 (1999)
981 P.2d 1019
21 Cal.4th 668
The PEOPLE, Plaintiff and Appellant,
v.
Cheryl Jeanene WOODS et al., Defendants and Respondents.
No. S068741.
Supreme Court of California.
August 26, 1999.
*90 Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Peggy S. Ruffra, Laurence K. Sullivan and John H. Deist, Deputy Attorneys General, for Plaintiff and Appellant.
Carlton E. Lacy, under appointment by the Supreme Court, Walnut Creek, for Defendant and Respondent Cheryl Jeanene Woods.
L. Richard Braucher, San Francisco, under appointment by the Supreme Court, and David J. Briggs, Richmond, under appointment by the Court of Appeal, for Defendant and Respondent William B. Benson.
Jose R. Villarreal, Ronald A. Norman and Stephen B. Elrick, San Jose, for California Public Defenders Association and Alternate Defender Office, Santa Clara County as Amicus Curiae on behalf of Defendants and Respondents.
BAXTER, J.
Gayla Loza agreed, as a condition of felony probation, to submit her residence to warrantless searches. During a warrantless search of Loza's residence, police officers uncovered evidence of criminal activity (drugs and firearms) against Cheryl Jeanene Woods and William B. Benson, who shared the residence with Loza. Woods and Benson successfully moved to suppress the evidence on the ground it had been obtained as the result of a pretextual probation search.
We granted review to consider whether a warrantless search of a probationer's house is constitutionally invalid when it is undertaken to discov incriminating evidence against a third party residing in the house. We conclude that, in this case, the officer's subjective intent did not invalidate the challenged search since the circumstances, viewed objectively, justified the officer's actions.

FACTS
On the night of September 9, 1995, Police Officer Norm Wielsch was on routine patrol in Antioch when he saw Jason Mofield walking in front of a house at 615 West 9th Street. Mofield was carrying a long object covered with a cloth, which Wielsch suspected was a weapon. Wielsch followed Mofield for several blocks and observed him transfer the object from hand to hand and behind his back, as though he was attempting to conceal it. When Mofield saw Wielsch, he quickened his pace and turned into a driveway.
Wielsch called out to Mofield, who then stopped and turned around. Wielsch directed him to shake the cloth-covered object in his hand. As he did so, two plastic baggies fell to the ground. One baggie contained a white substance, the other what looked like marijuana. Wielsch immediately grabbed Mofield and pulled the long object from his hand. Mofield threw a glass pipe and several baggies into some nearby ivy. After handcuffing Mofield, Wielsch picked up the cloth-covered object and discovered it was a long fixed-blade knife.
Wielsch arrested Mofield. During booking, Mofield told Wielsch he lived with his girlfriend, Gayla Loza, at 615 West 9th Street. Wielsch was familiar with Loza and knew she had consented to warrantless searches as a condition of her felony probation. Wielsch had also received a tip three days earlier that someone was selling drugs at 615 West 9th Street, and a year before he had assisted in executing a search warrant for drugs at that location. Wielsch, believing Mofield might have other *91 drugs stored at the house, decided to conduct a warrantless probation search of the house to look for drugs.
Wielsch immediately drove back to 615 West 9th Street, where he saw Loza at the front door. When told by Wielsch that he was going to search her residence, Loza responded by saying no. Wielsch then said: "Well, you're on probation, and we're going to search it." Wielsch entered the house, ascertained from Loza that she was there alone, and walked down a hallway to the only bedroom in the house. Upon entering the bedroom, he found Woods and Benson (hereafter defendants), who lived at the house, and two others. Wielsch also found methamphetamine and marijuana in that room, as well as two guns and letters addressed to Loza, Woods and Benson. Defendants were indicted for possession of methamphetamine, possession of marijuana for sale, and related enhancements.
Defendants moved to suppress the evidence. At the hearing, the superior court stated that Wielsch, possessing information of drug dealings prior to the Mofield encounter, "certainly could have done a search on Ms. Loza earlier if he wanted to" and that he would have been acting lawfully "if in fact this was a proper probation search." It found, however, that Wielsch had used the probation search as a pretext to search the residence for evidence against Mofield. The court granted defendants' motion pursuant to People v. Pipitone (1977) 86 Cal.App.3d 681, 152 Cal. Rptr. 1 (Pipitone), a decision that had upheld a suppression order based on a finding that officers had utilized a wife's probation search condition solely to collect evidence against her husband without first obtaining a warrant. (Id. at pp. 687-688, 152 Cal.Rptr. 1.) Thereafter the court granted defendants' motion to dismiss the charges against them.
The Court of Appeal affirmed. As an initial matter, it found "substantial evidence to support the superior court's factual finding that, subjectively, Officer Wielsch's sole reason for searching the residence was to discover evidence against Mofield." While expressing doubts about the continuing validity of Pipitone, supra, 86 Cal.App.3d 681, 152 Cal.Rptr. 1, the Court of Appeal noted that Pipitone was tacitly approved in People v. Bravo (1987) 43 Cal.3d 600, 610-611, 238 Cal.Rptr. 282, 738 P.2d 336 (Bravo) and was not clearly overruled by Whren v. United States (1996) 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (Whren). We granted the People's petition for review.

DISCUSSION

A.
As the finder of fact in a proceeding to suppress evidence (Pen.Code, § 1538.5), the superior court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable. (People v. Lawler (1973) 9 Cal.3d 156, 160, 107 Cal. Rptr. 13, 507 P.2d 621.) Accordingly, in reviewing the instant suppression order, we consider the record in the light most favorable to defendants as respondents since "all factual conflicts must be resolved in the manner most favorable to the [superior] court's disposition on the [suppression] motion." (People v. Martin (1973) 9 Cal.3d 687, 692, 108 Cal.Rptr. 809, 511 P.2d 1161.) But while we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, we exercise our independent judgment in determining the legality of a search on the facts so found. (People v. Glaser (1995) 11 Cal.4th 354, 362, 45 Cal.Rptr.2d 425, 902 P.2d 729; People v. Lawler, supra, 9 Cal.3d at p. 160, 107 Cal.Rptr. 13, 507 P.2d 621.)
Applying the foregoing standard of review, we agree with the Court of Appeal that "although we might have reached a different conclusion had we been the fact finders in this case, there is substantial *92 evidence to support the superior court's factual finding that, subjectively, Officer Wielsch's sole reason for searching the residence was to discover evidence against Mofield" and not to investigate whether Loza had violated her probation. Like the Court of Appeal, then, we consider ourselves bound by this finding of fact, even though we do not necessarily agree with it.
We now consider the constitutional significance of that factual finding. (People v. Glaser, supra, 11 Cal.4th at p. 362, 45 Cal.Rptr.2d 425, 902 P.2d 729; People v. Lawler, supra, 9 Cal.3d at p. 160, 107 Cal.Rptr. 13, 507 P.2d 621.)

B.
Pursuant to California Constitution, article I, section 28, subdivision (d), we review challenges to the admissibility of evidence obtained by police searches and seizures under federal constitutional standards. (People v. Bradford (1997) 15 Cal.4th 1229, 1291, 65 Cal.Rptr.2d 145, 939 P.2d 259; In re Tyrell J. (1994) 8 Cal.4th 68, 76, 32 Cal.Rptr.2d 33, 876 P.2d 519.)
The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., Amend. IV.) A search conducted without a warrant is unreasonable per se under the Fourth Amendment unless it falls within one of the "specifically established and well-delineated exceptions." (Katz v. United States (1967) 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; Bravo, supra, 43 Cal.3d at p. 609, 238 Cal.Rptr. 282, 738 P.2d 336.) It is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." (Schneckloth v. Bustamonte (1973) 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854; Bravo, supra, 43 Cal.3d at p. 605, 238 Cal.Rptr. 282, 738 P.2d 336.)
In California, probationers may validly consent in advance to warrantless searches in exchange for the opportunity to avoid service of a state prison term. (Bravo, supra, 43 Cal.3d at p. 608, 238 Cal.Rptr. 282, 738 P.2d 336; accord, Zap v. United States (1946) 328 U.S. 624, 628-629, 66 S.Ct. 1277, 90 L.Ed. 1477, vacated (1947) 330 U.S. 800, 67 S.Ct. 857, 91 L.Ed. 1259.)[1] For nearly three decades, this court has upheld the legality of searches authorized by probation terms that require probationers to submit to searches of their residences at any time of the day or night by any law enforcement officer with or without a warrant. (E.g., Bravo, supra, 43 Cal.3d at pp. 602, 607, 238 Cal.Rptr. 282, 738 P.2d 336; People v. Mason (1971) 5 Cal.3d 759, 763, 97 Cal. Rptr. 302, 488 P.2d 630, disapproved on other grounds in People v. Lent (1975) 15 Cal.3d 481, 486, fn. 1, 124 Cal.Rptr. 905, 541 P.2d 545.)
In Bravo, supra, 43 Cal.3d 600, 238 Cal. Rptr. 282, 738 P.2d 336, we concluded that a search condition of probation that permits a search of a probationer's home without a warrant also permits a search of the home without reasonable cause. (43 Cal.3d at pp. 607-609, 238 Cal.Rptr. 282, 738 P.2d 336.) We declined to hold that a probationer's consent to a "waiver" of Fourth Amendment rights must be limited to searches conducted upon reasonable suspicion, in part because "the opportunity *93 to choose probation might well be denied to many felons by judges whose willingness to offer the defendant probation in lieu of prison is predicated upon knowledge that the defendant will be subject to search at any time for a proper probation or law enforcement purpose." (43 Cal.3d at p. 609, 238 Cal.Rptr. 282, 738 P.2d 336.) Our holding, we observed, was consistent with the dual purpose of a search condition to deter further offenses by the probationer and to ascertain compliance with the terms of probation: "`"With knowledge he may be subject to a search by law enforcement officers at any time, [the probationer] will be less inclined to have [contraband] in his possession."'" (43 Cal.3d at p. 610, 238 Cal.Rptr. 282, 738 P.2d 336.)[2]
It long has been settled that a consent-based search is valid when consent is given by one person with common or superior authority over the area to be searched; the consent of other interested parties is unnecessary. (People v. Boyer (1989) 48 Cal.3d 247, 276, 256 Cal.Rptr. 96, 768 P.2d 610; People v. Haskett (1982) 30 Cal.3d 841, 856, 180 Cal.Rptr. 640, 640 P.2d 776; People v. Veiga (1989) 214 Cal.App.3d 817, 828, 262 Cal.Rptr. 919; see People v. Clark (1993) 5 Cal.4th 950, 979, 22 Cal.Rptr.2d 689, 857 P.2d 1099 [search of a car].) Warrantless consent searches of residences have been upheld even where the unmistakable purpose of the search was to obtain evidence against a nonconsenting coinhabitant. (E.g., United States v. Matlock (1974) 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 [roommate's consent, obtained after defendant was arrested and removed from the scene, sufficient]; People v. Haskett, supra, 30 Cal.3d at pp. 856-857, 180 Cal.Rptr. 640, 640 P.2d 776.)
As the United States Supreme Court explains, "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." (United States v. Matlock, supra, 415 U.S. at p. 171, 94 S.Ct. 988, fn. omitted; see Illinois v. Rodriguez (1990) 497 U.S. 177, 188-189, 110 S.Ct. 2793, 111 L.Ed.2d 148.) The "common authority" theory of consent rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (United States v. Matlock, supra, 415 U.S. at p. 171, fn. 7, 94 S.Ct. 988; People v. Haskett, supra, 30 Cal.3d at p. 856, 180 Cal.Rptr. 640, 640 P.2d 776.)
In this court, defendants do not dispute that Loza was subject to a probation search condition that allowed the police to conduct a warrantless search of her residence.[3] Nonetheless, defendants contend Griffin v. Wisconsin (1987) 483 U.S. 868, *94 107 S.Ct. 3164, 97 L.Ed.2d 709 (Griffin) supports the conclusion that a probation search, when undertaken for reasons unrelated to the probationer, violates the Fourth Amendment because it does not serve the special need which justifies the search in the first place. In defendants' view, Griffin supports the analysis of Pipitone, supra, 86 Cal.App.3d 681, 152 Cal. Rptr. 1, which held that officers could not rely on a wife's probation search condition solely to collect evidence against her husband.
In Griffin, supra, 483 U.S. 868,107 S.Ct. 3164, 97 L.Ed.2d 709, the United States Supreme Court upheld the warrantless search of a Wisconsin probationer's home because it was conducted pursuant to a regulatory scheme that itself satisfied the Fourth Amendment's reasonableness requirement.[4] Central to the high court's analysis was its determination that Wisconsin's operation of a probation system presented a "special need" beyond normal law enforcement that justified a departure from the usual warrant and probable cause requirements. (483 U.S. at p. 875, 107 S.Ct. 3164.) In particular, the court believed that close supervision of probationers could promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers. (Ibid.)
In addition to finding that the supervision of probationers qualified as a special need, the court determined in Griffin that a warrant requirement would appreciably interfere with the state probation system by substituting a magistrate's judgment for that of a probation officer in assessing the amount of supervision required for a probationer and by making it more difficult for probation officials to respond quickly to evidence of a probationer's misconduct. (483 U.S. at p. 876, 107 S.Ct. 3164.) Furthermore, a probable cause requirement would reduce the deterrent effect of the probation system since "[t]he probationer would be assured that so long as his illegal (and perhaps socially dangerous) activities were sufficiently concealed as to give rise to no more than reasonable suspicion, they would go undetected and uncorrected." (483 U.S. at p. 878, 107 S.Ct. 3164.) In light of these and other considerations, the court found it constitutionally acceptable for Wisconsin, as part of its probation system, to dispense with the necessity of a warrant and to employ a "reasonable grounds" requirement, as opposed to the probable cause standard, for purposes of probation searches.
Contrary to defendants' assertions, Griffin does not suggest that any probation search conducted for reasons unrelated to the probationer must be found invalid under the Fourth Amendment. Griffin addressed the constitutional validity of a regulatory scheme that allowed warrantless searches of persons placed on probation. (See 483 U.S. at pp. 870-871, 107 S.Ct. 3164.) Because such search conditions were imposed by regulation, the high court elaborated on the "special need" of the state for close supervision of probationers as justifying an exception to the warrant and probable cause requirements of the Fourth Amendment. (483 U.S. at pp. 873-875, 107 S.Ct. 3164.) Accordingly, there was no reason for the court to consider application of a consentbased exception to the warrant requirement.[5] Although Griffin supports the *95 general conclusion that a regulation allowing warrantless searches of probationers serves to promote the rehabilitative purposes of probation and to protect the public from probationer misconduct, its analysis provides little guidance on the specific issue at hand.
Nearly a decade after Griffin, the United States Supreme Court decided Whren, supra, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89. In Whren, undercover police officers temporarily detained a motorist who the officers had probable cause to believe had committed a civil traffic violation. There was evidence, however, that the officers actually stopped the motorist to investigate whether he was engaged in illegal drug dealing. During the detention, the police observed crack cocaine in plain view inside the vehicle. At a pretrial suppression hearing, the motorist and his passenger challenged the drug evidence on the ground that the traffic stop was a mere pretext to search their vehicle for evidence of drugs. The high court rejected the pretext argument and held that the officers' subjective motivations did not invalidate the search since the circumstances, viewed objectively, justified their action. Although the court acknowledged prior decisions indicating that pretextual searches were inappropriate in the context of "inventory searches" and "administrative inspections," it remarked that "only an undiscerning reader would regard these cases as endorsing the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred." (517 U.S. at p. 811, 116 S.Ct. 1769.)
The People argue Whren is the latest in a line of Supreme Court decisions recognizing that the subjective intent of a police officer is irrelevant in evaluating the legality of a search or seizure. Conversely, defendants assert Whren's analysis is limited to police actions that are otherwise supported by probable cause.
Whren, of course, does not address probation searches, consent-based or otherwise. For the reasons below, however, we conclude that Whren's analysis logically extends, at the very least, to a search where, as here, the circumstances, viewed objectively, show a possible probation violation that justifies a search of the probationer's house pursuant to a search condition.[6]
Statements in Whren strongly suggest that the propriety of disregarding an officer's subjective intent is not strictly confined to searches justified by probable cause: "Not only have we never held, outside the context of inventory search or administrative inspection (discussed above), that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." (Whren, supra, 517 U.S. at p. 812, 116 S.Ct. 1769.) In explaining what it meant by "inventory search" and "administrative inspection," the court provided definitions that, on their face, exclude probation searches. Specifically, the court defined an "inventory search" as "the search of *96 property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." (Whren, supra, 517 U.S. at p. 811, fn. 1, 116 S.Ct. 1769.) An "administrative inspection" was described as "the inspection of business premises conducted by authorities responsible for enforcing a pervasive regulatory scheme  for example, unannounced inspection of a mine for compliance with health and safety standards." (Whren, supra, at p. 811, fn. 2,116 S.Ct. 1769.)
In a passage significant to the issue before us, the Supreme Court explained: "In United States v. Villamonte-Marquez, 462 U.S. 579, 584, n. 3 [103 S.Ct. 2573, 77 L.Ed.2d 22] (1983), we held that an otherwise valid warrantless boarding of a vessel by customs officials was not rendered invalid 'because the customs officers were accompanied by a Louisiana state policeman, and were following an informant's tip that a vessel in the ship channel was thought to be carrying marihuana.' We flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification. In United States v. Robinson, 414 U.S. 218 [94 S.Ct. 467, 38 L.Ed.2d 427] (1973), we held that a trafficviolation arrest (of the sort here) would not be rendered invalid by the fact that it was `a mere pretext for a narcotics search,' id., at 221, n. 1 [94 S.Ct. 467, 38 L.Ed.2d 427].... And in Scott v. United States, 436 U.S. 128, 138 [98 S.Ct. 1717, 56 L.Ed.2d 168] (1978), in rejecting the contention that wiretap evidence was subject to exclusion because the agents conducting the tap had failed to make any effort to comply with the statutory requirement that unauthorized acquisitions be minimized, we said that `[s]ubjective intent alone ... does not make otherwise lawful conduct illegal or unconstitutional.'" (Whren, supra, 517 U.S. at pp. 812-813, 116 S.Ct. 1769.) The court concluded by emphasizing the principle that "`the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" (Whren, supra, 517 U.S. at p. 813, 116 S.Ct. 1769.)
It is reasonable to infer from the high court's reference to United States v. Villamonte-Marquez (1983) 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (Villamonte-Marquez ) that the objective standard may apply outside the context of police actions supported by probable cause. As indicated in the court's discussion, Villamonte-Marquez upheld the validity of the suspicionless boarding of a vessel by government officers pursuant to a statute that allows the boarding of any vessel at any time for examination of the manifest and other documentation (19 U.S.C. § 1581(a)). The defendants in that case had argued that the statute could not be relied upon to validate the boarding where, as there, customs and state police officers had been working together and following a tip regarding a cargo of marijuana. That argument was roundly rejected, with the court remarking there was "`little logic in sanctioning such examinations of ordinary, unsuspect vessels but forbidding them in the case of suspected smugglers.'" (Villamonte-Marquez, supra, 462 U.S. at p. 584, n. 3, 103 S.Ct. 2573.) Viewed together, Villamonte-Marquez, supra, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22, and Whren, supra, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, refute defendants' broad assertion that, absent probable cause, pretext or subterfuge will vitiate ostensibly lawful police actions.
Indeed, there are good reasons to disregard an officer's subjective intent in assessing the validity of a search or seizure. As the Supreme Court emphasized in a case involving the plain view doctrine, "evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of *97 the officer. The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement." (Horton v. California (1990) 496 U.S. 128, 138, 110 S.Ct. 2301, 110 L.Ed.2d 112 [holding the Fourth Amendment does not prohibit the warrantless seizure of evidence in plain view even though discovery of the evidence was not inadvertent].)
In the probation search context, an objective standard would discourage the sort of disparate results that might result if the validity of such searches were to turn on the searching officer's subjective intent. For instance, another officer, possessing the same knowledge and faced with the same circumstances as Officer Wielsch, legitimately and convincingly might have testified that she went to Loza's house to determine if Loza was complying with probation, even though she believed that evidence incriminating others might also be found. If subjective intent were the controlling factor, then defendants' suppression motion would not have succeeded even though the officer had conducted her search no differently than Wielsch.
But whether the purpose of the search is to monitor the probationer or to serve some other law enforcement purpose, or both, the search in any case remains limited in scope to the terms articulated in the search clause (Bravo, supra, 43 Cal.3d at p. 605, 238 Cal.Rptr. 282, 738 P.2d 336) and to those areas of the residence over which the probationer is believed to exercise complete or joint authority (United States v. Matlock, supra, 415 U.S. at pp. 170-171, 94 S.Ct. 988; People v. Boyer, supra, 48 Cal.3d at p. 276, 256 Cal.Rptr. 96, 768 P.2d 610; People v. Haskett, supra, 30 Cal.3d at p. 856, 180 Cal.Rptr. 640, 640 P.2d 776). Given such constraints, there is little to be advanced by validating a search merely upon the searching officer's ability to convincingly articulate the proper subjective motivation for his or her actions. As one legal scholar observed in the stop-and-frisk context, "surely the catch is not worth the trouble of the hunt when courts set out to bag the secret motivations of policemen.... A subjective purpose to do something that the applicable legal rules say there is sufficient objective cause to do can be fabricated all too easily and undetectably." (Amsterdam, Perspectives on the Fourth Amendment (1974) 58 Minn. L.Rev. 349, 436-137, fns. omitted.) Those same concerns are present in the probation search context.
Applying an objective standard to the facts of this case, we see no basis for invalidating Officer Wielsch's search and seizure of evidence at the residence at 615 West 9th Street. The record, viewed objectively, shows that Loza was on probation and had agreed to submit her residence to warrantless searches by law enforcement officers. Wielsch had been told, three days before the search, that drugs were being sold out of the house at Loza's address. On the night of the search, Wielsch had observed Loza's livein boyfriend, Jason Mofield, walking from the area of the house in a suspicious manner. Wielsch later ascertained Mofield was carrying a weapon and illegal drugs. Regardless of Wielsch's ulterior motives, the circumstances presented ample justification for entry and search of the house pursuant to Loza's search condition.[7]
In closing, it should be emphasized that our holding is not intended to legitimize unreasonable searches with respect to nonprobationers who share residences with probationers. In all cases, a search pursuant to a probation search clause may not exceed the scope of the particular clause relied upon. (See Bravo, supra, 43 Cal.3d at p. 605, 238 *98 Cal.Rptr. 282, 738 P.2d 336.) Nor may such a search be undertaken in a harassing or unreasonable manner. (Bravo, supra, 43 Cal.3d at p. 607, 238 Cal.Rptr. 282, 738 P.2d 336; People v. Mason, supra, 5 Cal.3d at p. 765, fn. 3, 97 Cal.Rptr. 302, 488 P.2d 630; cf. People v. Haskett, supra, 30 Cal.3d at p. 857, 180 Cal.Rptr. 640, 640 P.2d 776.) Moreover, officers generally may only search those portions of the residence they reasonably believe the probationer has complete or joint control over. (Cf. Illinois v. Rodriguez, supra, 497 U.S. at pp. 188-189, 110 S.Ct. 2793 [facts available to officer must give rise to reasonable belief that consenting party has authority over the premises to be searched; if not, warrantless entry without further inquiry is unlawful unless authority actually exists].) That is, unless the circumstances are such as to otherwise justify a warrantless search of a room or area under the sole control of a nonprobationer (e.g., exigent circumstances), officers wishing to search such a room or area must obtain a search warrant to do so.

DISPOSITION
The judgment of the Court of Appeal is reversed. The matter is remanded to that court for further proceedings consistent with this opinion.
GEORGE, C.J., WERDEGAR, J., and CHIN, J., concur.
Dissenting Opinion by KENNARD, J.
Recently, dissenting from this court's decision in People v. Reyes (1998) 19 Cal.4th 743, 80 Cal.Rptr.2d 734, 968 P.2d 445 to permit warrantless, suspicionless searches of homes occupied by parolees with a parole search condition, I wrote: "As a consequence of today's decision by the majority, government officials may now search private homes in neighborhoods throughout the state, by day or by night, for any reason or for no reason, if one of the home's residents is a parolee subject to a search condition. As the United States Supreme Court has stressed, `physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' (United States v. United States District Court (1972) 407 U.S. 297, 313 [92 S.Ct. 2125, 2134, 32 L.Ed.2d 752].) By requiring reasonable suspicion for parole searches, the court in [People v.] Burgener [(1986)] 41 Cal.3d 505, 224 Cal.Rptr. 112, 714 P.2d 1251, protected the privacy of the home while at the same time recognizing the government's substantial interest in supervising parolees. I decline to join the majority in adopting a rule that recognizes no distinction between a private home occupied by a parolee and a prison cell, and that authorizes warrantless, suspicionless searches of private homes." (19 Cal.4th at p. 765, 80 Cal.Rptr.2d 734, 968 P.2d 445 (dis. opn. of Kennard, J.).)
The effects of today's decision are equally pernicious. It permits police to use a probation search condition, which authorizes the warrantless, suspicionless search of a probationer, as authority to search a home for the express purpose of seeking evidence against nonprobationers who share the residence with the probationer. Once again, in an era in which privacy has become increasingly fragile and endangered, this court has chosen to erode the constitutional protections that help to preserve it. The majority's arguments supporting this regrettable result are illfounded for the reasons explained in Justice Brown's dissent, which I join.
MOSK, J., concurs.
Dissenting Opinion by BROWN, J.
From its consent rationale to its reliance on Whren v. United States (1996) 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, the majority opinion is fatally flawed at every turn: on the law, on the facts, on principle.
In appending the Bill of Rights to the Constitution, the framers sought to protect individuals against government excess. High in that pantheon was the Fourth *99 Amendment guarantee against unreasonable searches and seizures, which generally forbids such actions except pursuant to warrant issued upon probable cause by a neutral magistrate. By their decision today, a majority of this court set the history of personal liberties back more than 200 years and resurrect a specter of the general warrants and writs of assistance so abhorred in England and the American Coloniesthe very impetus of the Fourth Amendment. I dissent.

A.
The majority's discussion implies all consents are created equala highly questionable proposition in circumstances that effectively transform a search condition into a general warrant.
In United States v. Matlock (1974) 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242, the United States Supreme Court allowed "that the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." In such circumstances, one will be "held to have assumed the risk" that a co-occupant or copossessor might consent to a search of the premises or effects. (Id. at p. 171, 94 S.Ct. 988; see, e.g., Frazier v. Cupp (1969) 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684.) "The authority which justifies the third-party consent ... rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (United States v. Matlock, supra, 415 U.S. at p. 172, fn. 7, 94 S.Ct. 988.)
The same reasoning does not apply in the case of a probationer subject to a search condition. For example, here Gayla Loza gave consent 16 months prior to the actual search. There is no evidence that she and defendants then resided at the same location. Nor did she exercise any common authority to permit the inspection at this later time; rather she lacked the ability to refuse, having bargained that right for her freedom. The majority cites no authority validating third party consent on such an attenuated basis.
While I do not question the lawfulness of seizing evidence observed in plain view during a search initiated for a proper probationary purpose (see, e.g., Russi v. Superior Court (1973) 33 Cal.App.3d 160, 167-170, 108 Cal.Rptr. 716), the consent given in exchange for the benefits of probation is not a Fourth Amendment blank check. Even as to the probationer, a search "may [not] be conducted for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes." (People v. Bravo (1987) 43 Cal.3d 600, 610, 238 Cal.Rptr. 282, 738 P.2d 336.) Obviating the warrant requirement with respect to nonprobationers is not a legitimate law enforcement objective. Moreover, a police officer who does not conduct a search for a valid probationary purpose is not engaged in otherwise lawful conduct, thereby vitiating the consent justification. (See generally, 4 Witkin & Epstein, Cal.Criminal Law (2d ed.1989) Exclusion of Illegally Obtained Evidence, §§ 2288-2290, pp. 2688-2691 [citing cases in which illegal act, coercion, or fraud vitiated consent].) Those associating with a probationer assume the ongoing risk their property and effects in common or shared areas of a residence may be subject to search. But, to hold that police may use a search condition in lieu of a warrant to search for incriminating evidence against third parties simply by virtue of their association with a probationer "create[s] a significant potential for abuse." (Steagald v. United States (1981) 451 U.S. 204, 215, 101 S.Ct. 1642, 68 L.Ed.2d 38.)
The majority's analysis completely ignores this court's own teachings on the question. In Tompkins v. Superior Court (1963) 59 Cal.2d 65, 69, 27 Cal.Rptr. 889, *100 378 P.2d 113, the court held "that one joint occupant who is away from the premises may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time, at least where as in this case, no prior warning is given, no emergency exists, and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter." By any measure, Loza was "away from the premises" when she gave consent in exchange for a grant of probation. (Id. at p. 69, 27 Cal.Rptr. 889, 378 P.2d 113; see also People v. Shelton (1964) 60 Cal.2d 740, 743, 745-746, 36 Cal.Rptr. 433, 388 P.2d 665; Duke v. Superior Court (1969) 1 Cal.3d 314, 322, 82 Cal.Rptr. 348, 461 P.2d 628.) Equally evident, Officer Wielsch "fail[ed] even to disclose his purpose" to defendants when he entered their bedroom unannounced. (Tompkins v. Superior Court, supra, 59 Cal.2d at p. 69, 27 Cal. Rptr. 889, 378 P.2d 113; see also Duke v. Superior Court, supra, 1 Cal.3d at pp. 324-325, 82 Cal.Rptr. 348, 461 P.2d 628; cf. Pen.Code, § 844.) More importantly, defendants were not absent and had they been asked might have disputed Loza's authority to consent to a search of a bedroom she did not occupy. (Cf. People v. Haskett (1982) 30 Cal.3d 841, 855-857, 180 Cal.Rptr. 640, 640 P.2d 776.)
Nor does the record support the majority's implicit assumption that Loza had sufficient common authority to give valid third party consent. "The burden of establishing... common authority rests upon the State." (Illinois v. Rodriguez (1990) 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148.) Such authority "is ... not to be implied from the mere property interest a third party has in the property.... [It] rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common areas to be searched." (United States v. Matlock, supra, 415 U.S. at p. 172, fn. 7, 94 S.Ct. 988.)
When Officer Wielsch entered the residence, he saw evidence of separate sleeping accommodations. Nevertheless, he immediately went to the back bedroom despite the fact Loza's probation officer had previously informed him that Loza stayed in a camper shell located on the premises. She only had access toand therefore joint authority over"the residence, the toilet facilities, the kitchen facilities, the general living areas."
An objective standard governs in these circumstances: "`would the facts available to the officer at the moment ... "warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises? [Citation.]" (Illinois v. Rodriguez, supra, 497 U.S. at p. 188, 110 S.Ct. 2793, quoting Terry v. Ohio (1968) 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889.) "Even when the invitation is accompanied by an explicit assertion that the [consenting] person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." (497 U.S. at p. 188, 110 S.Ct. 2793.) Given the facts of this case, no reasonable officer would have entered defendants' occupied bedroom without ascertaining more information as to control. (See also Young v. Superior Court (1976) 57 Cal.App.3d 883, 887, 129 Cal.Rptr. 422 ["An occupant of a closed bathroom, the same as an occupant of a closed bedroom, is entitled to an expectation of privacy far greater than those persons in the common areas of a house, such as the living room and kitchen." (Italics added.)].) Thus, the third party consent reasoning is factually flawed under United States v. Matlock, supra, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 and Illinois v. Rodriguez, supra, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148, even if it might *101 otherwise generally apply in the circumstance of a probation search condition.
Furthermore, the consent theory articulated in People v. Bravo, supra, 43 Cal.3d 600, 238 Cal.Rptr. 282, 738 P.2d 336 (Bravo) may be largely moot in light of People v. Reyes (1998) 19 Cal.4th 743, 80 Cal. Rptr.2d 734, 968 P.2d 445 (Reyes). Bravo focused on the quid pro quo of the probationer's "waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term" and justified dispensing with particularized suspicion on the basis of "consent." (43 Cal.3d at pp. 608-609, 238 Cal.Rptr. 282, 738 P.2d 336.) In Reyes, the court could not rely on this legal fiction "because, under the Determinate Sentencing Act of 1976, parole is not a matter of choice.... [Citation.]" (Reyes, supra, 19 Cal.4th at p. 749, 80 Cal.Rptr.2d 734, 968 P.2d 445.) Nevertheless, a majority concluded "[t]he level of intrusion [of a suspicionless search of a parolee subject to a search condition] is de minimis and the expectation of privacy greatly reduced when the subject of the search is on notice that his activities are being routinely and closely monitored[, and] the purpose of the search condition is to deter the commission of crimes and to protect the public, and the effectiveness of the deterrent is enhanced by the potential for random searches." (Id. at p. 753, 80 Cal.Rptr.2d 734, 968 P.2d 445.) This administrative necessity rationale of Reyes applies equally to probationers and should effectively supersede the fictive consent justification of Bravo.
The majority's reliance on a consent rationale also reintroduces a disparity between parolees and juvenile probationers on the one hand and adult probationers on the other analogous to the one the court sought to eliminate in Reyes, supra, 19 Cal.4th 743, 80 Cal.Rptr.2d 734, 968 P.2d 445. Overruling the reasonable suspicion requirement of People v. Burgener (1986) 41 Cal.3d 505, 224 Cal.Rptr. 112, 714 P.2d 1251, the court in Reyes held the special needs attendant on parole supervision justified the same standard for parole searches as for probation searches. (Reyes, supra, 19 Cal.4th at pp. 753-754, 80 Cal.Rptr.2d 734, 968 P.2d 445.) Since consent is not at issue in sustaining warrantless, suspicionless searches for parolees and juvenile probationers (see In re Tyrell J. (1994) 8 Cal.4th 68, 86, 32 Cal. Rptr.2d 33, 876 P.2d 519 [absence of reasonable expectation of privacy]), their search conditions cannot provide the predicate for invading the Fourth Amendment rights of third parties who reside with them. At the same time, the majority's holding gives law enforcement carte blanche to do so if the co-occupant is fortuitously an adult probationer, whether or not the co-occupant's probationary status and search condition are known. The majority offers no justification for this anomalous treatment.

B.
The majority's reliance on Whren v. United States, supra, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (Whren) for its "objectively reasonable" rationale is also unpersuasive. The United States Supreme Court's recent pronouncements in Knowles v. Iowa (1998) 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 suggest the majority has overestimated the breadth of the Whren rationale. In Knowles, the state attempted to justify a warrantless search of the defendant's vehicle as "incident to arrest" (United States v. Robinson (1973) 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; see New York v. Belton (1981) 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768) under a state statute authorizing such action upon the issuance of a citation in lieu of arrest. In a terse unanimous opinion by Chief Justice Rehnquist, the high court rejected this argument and invalidated the search because it was factually unsupported by the "historic rationales" for the proffered exception, officer safety and the need to discover and preserve evidence. (Knowles v. Iowa, supra, 525 U.S. at p. ___, 119 S.Ct. at p. 487.)
*102 Under the majority's analysis, the search would have been "objectively reasonable" because the officer could have taken the defendant into custody and validly searched incident to the arrest. Nevertheless, the Supreme Court declined to adopt such reasoning and continued to hew to a strict application of any exception to the warrant requirement, mandating that it be factually, not just theoretically, substantiated. (See, e.g., Minnesota v. Dickerson (1993) 508 U.S. 366, 374-375, 113 S.Ct. 2130, 124 L.Ed.2d 334 [officer may not rely on "plain feel" during Terry frisk to seize nonthreatening contraband]; Arizona v. Hicks (1987) 480 U.S. 321, 326-327, 107 S.Ct. 1149, 94 L.Ed.2d 347 [probable cause required to invoke plain view doctrine].) By a parity of reasoning, when the prosecution relies on a search condition, the facts must demonstrate the officer's conduct was predicated on a valid probation or parole purpose. (See Reyes, supra, 19 Cal.4th at p. 754, 80 Cal.Rptr.2d 734, 968 P.2d 445; Bravo, supra, 43 Cal.3d at pp. 610-611, 238 Cal.Rptr. 282, 738 P.2d 336.)
By contrast, Whren, supra, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, raised distinct Fourth Amendment issues not implicated here. In Whren, plainclothes police officers patrolling a "`high drug area'" became suspicious of the youthful occupants of a truck stopped at a stop sign. (Id. at p. 808, 116 S.Ct. 1769.) When the vehicle "turned suddenly to its right, without signaling, and sped off at an `unreasonable' speed" (ibid.), the officers pursued and made a traffic stop for the moving violations they had observed. As one of the officers "drew up to the driver's window, he immediately observed two large plastic bags of what appeared to be crack cocaine in petitioner Whren's hands." (Id. at pp. 808-809, 116 S.Ct. 1769.) Whren contended the evidence should have been suppressed because the officers made the traffic stop actually suspecting illegal drug-dealing activity and therefore it was pretextual.
The Supreme Court rejected the argument, distinguishingbut not questioningprior decisions in which it had suggested the use of a pretext might invalidate an otherwise lawful search. (Whren, supra, 517 U.S. at p. 811, 116 S.Ct. 1769; see Florida v. Wells (1990) 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 [inventory search may not be used as ruse for general rummaging to discover incriminating evidence]; New York v. Burger (1987) 482 U.S. 691, 716-717, fn. 27, 107 S.Ct. 2636, 96 L.Ed.2d 601 [administrative inspection not pretext for obtaining evidence of criminal violations]; Colorado v. Bertine (1987) 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 [no showing police acted in bad faith or for investigatory purpose in conducting inventory search].) In the court's view, "only an undiscerning reader would regard these cases as endorsing the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred. In each case we were addressing the validity of a search conducted in the absence of probable cause." (Whren, supra, 517 U.S. at p. 811, 116 S.Ct. 1769, first italics added.)
Instead, the high court relied on another line of cases in which "`[s]ubjective intent alone'" did not render "'otherwise lawful conduct illegal or unconstitutional.'" (Whren, supra, 517 U.S. at p. 813, 116 S.Ct. 1769, italics added, quoting Scott v. United States (1978) 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 [lawfully acquired wiretap evidence not subject to exclusion because agents did not minimize unauthorized acquisitions]; see also United States v. Villamonte-Marquez (1983) 462 U.S. 579, 584, fn. 3, 103 S.Ct. 2573, 77 L.Ed.2d 22 [otherwise lawful boarding of vessel by customs official not invalid even though official was acting on information ship was carrying marijuana and accompanied by state police officers]; United States v. Robinson, supra, 414 U.S. at pp. *103 221, fn. 1, 236, 94 S.Ct. 467 [arrest for traffic violation not "pretext for a narcotics search"; nor was postarrest search invalid because officer did not have safety concern].) "`[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" (Whren, supra, 517 U.S. at p. 813, 116 S.Ct. 1769, quoting Scott v. United States, supra, 436 U.S. at p. 138, 98 S.Ct. 1717.) In sum, the court concluded, "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." (517 U.S. at p. 813, 116 S.Ct. 1769.)
To paraphrase the Whren court, only an undiscerning reader would fail to grasp the significance of probable cause to its rationale. Indeed, "probable cause" is the leitmotif of Justice Scalia's unanimous opinion and provides the structural framework of the entire analysis. (See Whren, supra, 517 U.S. at pp. 811, 813, 816, 817, 818, 819, 116 S.Ct. 1769; see also, e.g., Arizona v. Hicks, supra, 480 U.S. at p. 326, 107 S.Ct. 1149 [seizure of item in plain view requires probable cause to believe it is contraband or evidence of crime].) The court eschewed consideration of the officers' motivation because they had probable cause to believe a traffic violation had occurred.
The majority's interpretation of Whren these core underpinnings and distorts the type of police activity the court characterized as objectively reasonable, (Whren, supra, 517 U.S. at pp. 811-813, 116 S.Ct. 1769.) Here, no question of probable cause arises.[1] Moreover, Wielsch's conduct was not objectively reasonable because he did not initiate the search for valid probationary reasons, "[T]he exemption from the need for probable cause (and warrant), which is accorded to searches made for the purpose of inventory or administrative regulation, is not accorded to searches that are not made for those purposes. [Citations.]" (Whren, supra, at pp. 811-812, 116 S.Ct. 1769.)

C.
The record contains substantial evidence to support the trial court's conclusion Wielsch did not conduct "a proper probation search" but acted on "a subterfuge to get into [the] place to search for evidence against Mofield." The specific testimony as to Wielsch's motivation was somewhat equivocal, which, as finder of fact, the trial court had no resolve. (People v. Martin (1973) 9 Cal.3d 687, 692, 108 Cal.Rptr. 809, 511 P.2d 1161; People v. Lawler (1973) 9 Cal.3d 156, 160, 107 Cal.Rptr. 13, 507 P.2d 621; see also People v. Manning (1973) 33 Cal.App.3d 586, 599, 109 Cal.Rptr. 531) In granting the motion to suppress, the court acknowledged the possibility Wielsch could have acted properly pursuant to Loza's probation condition. It concluded, however, that he had failed to do so in light of the following facts: The search took place "so close in time" to Mofield's arrest that Wielsch's motive in conducting the search was to discover evidence against him, not to determine Loza's compliance with the conditions of her probation. Two or three days prior to the search Wielsch had been informed of drug dealing at the location but did not conduct a probation search of Loza at that time, Wielsch testified he "suspected that Mr. Mofield [and possibly defendants] might *104 have drugs" and weapons at the residence when he initiated the search.
The court also determined that the reason for the search did not go to the terms and conditions of Loza's probation, i.e., that Wielsch did not have dual reasons for searching the house but only sought to uncover more evidence against Mofield. Additional facts support this inference: Notwithstanding testimony he went to the residence to "perform a probation search," Wielsch did not contact or inform Loza's probation officer even though they were "friends" and saw each other "on a daily basis." Nor, apparently, had he informed the probation officer that two or three days prior to the search he had received information drug dealing was occurring at Loza's residence. At no time did Wielsch make reference to Loza's probation other than to note in passing as he entered the premises that she was subject to a search condition. He did not discuss his purpose or express any concern that she might be in violation of probation. Rather, his avowed focus was Mofield, whom he had just arrested, and defendants, who had apparently been arrested for drug-related offenses the previous year when Wielsch had assisted in serving a search warrant at the location.
To put this conduct in analytical perspective, we must consider the function of a search condition, which generally requires a probationer to submit his or her person and property to search or seizure at any time of the day or night by any law enforcement officer with or without a warrant. (See, e.g., Bravo, supra, 43 Cal.3d at p. 603, fn. 1, 238 Cal.Rptr. 282, 738 P.2d 336.) In People v. Mason (1971) 5 Cal.3d 759, 97 Cal.Rptr. 302, 488 P.2d 630, disapproved on other grounds in People v. Lent (1975) 15 Cal.3d 481, 486, footnote 1, 124 Cal.Rptr. 905, 541 P.2d 545, this court upheld the validity of such a provision imposed on a former drug user given "the acknowledged purposes ... to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation." (5 Cal.3d at p. 763, 97 Cal.Rptr. 302, 488 P.2d 630.) "[T]he cases have held that such a condition is reasonable and valid, being `related to [the probationer's] reformation and rehabilitation sin the light of the offense of which he was convicted.' [Citations.]" (Id. at p. 764, 97 Cal.Rptr. 302, 488 P.2d 630.)
Consequently, "a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection." (People v. Mason, supra, 5 Cal.3d at p. 765, 97 Cal.Rptr. 302, 488 P.2d 630, fn. omitted.) "[W]hen defendant in order to obtain probation specifically agreed to permit at any time a warrantless search of his person, car and house, he voluntarily waived whatever claim of privacy he might otherwise have had." (Id at p. 766, 97 Cal.Rptr. 302, 488 P.2d 630.) The court in Mason also found Zap v. United States (1946) 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477, "controlling..., for it upheld the validity of an advance waiver of Fourth Amendment rights akin to the provisions of the probation condition before us." (People v. Mason, supra, 5 Cal.3d at p. 765, 97 Cal.Rptr. 302, 488 P.2d 630.) Notably, the United States Supreme Court in Zap had observed, "The agents ... obtained by lawful means access to the [incriminating] documents.... They did not obtain access by force, fraud, or trickery." (Zap v. United States, supra, 328 U.S. at p. 629, 66 S.Ct. 1277.)
In Bravo, supra, 43 Cal.3d 600, 238 Cal. Rptr. 282, 738 P.2d 336, this court reaffirmed the rehabilitative purpose of a search condition as well as the consent rationale, which obviates not only the warrant requirement but dispenses with the need for any articulable suspicion of criminal activity. (Id. at pp. 607-610, 238 Cal. Rptr. 282, 738 P.2d 336.) At the same time, however, the court cautioned: "We do not suggest that searches of probationers may be conducted for reasons unrelated *105 to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes. A waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons. ([Citations]; cf. People v. Pipitone (1978) [(1977)] 86 Cal.App.3d 681, 688 [152 Cal. Rptr. 1] [pretext search].)" (Id. at pp. 610-611, 238 Cal.Rptr. 282, 738 P.2d 336; see People v. Mason, supra, 5 Cal.3d at p. 765, fn. 3, 97 Cal.Rptr. 302, 488 P.2d 630; cf. Reyes, supra, 19 Cal.4th at pp. 753-754, 80 Cal.Rptr.2d 734, 968 P.2d 445 [parole searches unreasonable if for "`reasons establishing arbitrary or oppressive conduct'"].)
Plainly, a probation search must be tied to the reasons for imposing such a condition in the first instance, i.e., "to monitor the probationer's progress and compliance with the terms of probation." (In re Marcellus L. (1991) 229 Cal.App.3d 134, 140, 279 Cal.Rptr. 901.) A court will uphold its validity for those reasons only. (See In re Anthony S. (1992) 4 Cal.App.4th 1000, 1004, 6 Cal.Rptr.2d 214 ["Where the motivation is unrelated to rehabilitative and reformative purposes or legitimate law enforcement purposes, the [probation] search is `arbitrary' [within the meaning of Bravo]."].) As the court in Russi v. Superior Court expressly noted, "if the record disclosed any inference that the purpose of the officers' intervention [pursuant to a probation search condition] was to secure evidence that would implicate [the cotenant] in crime, the posture of the search would be different and the antecedent... consent [of the probationer] might not then operate `to allow the opening of her personal receptacles somehow to produce evidence against' him...." (33 Cal. App.3d at p. 167, 108 Cal.Rptr. 716, italics omitted.) This conclusion follows inevitably from the long-established rule that "where the right to conduct a search is obtained ostensibly for one purpose it may not be used in reality for another. [Citations.]" (People v. Roberts (1956) 47 Cal.2d 374, 378, 303 P.2d 721; see People v. Haven (1963) 59 Cal.2d 713, 719-720, 31 Cal.Rptr. 47, 381 P.2d 927; People v. Howard (1984) 162 Cal.App.3d 8, 19, 208 Cal. Rptr. 353.)

D.
Nothing in the reasoning or language of Whren compromises these principles. To the contrary, they fully comport with extensive authority thatabsent probable causepretext or subterfuge will vitiate an ostensibly lawful search or seizure. For example, the Supreme Court has long recognized a Fourth Amendment exception for "`special needs, beyond the normal need for law enforcement, [which] make the warrant and probable-cause requirement impracticable.' [Citation.]" (Griffin v. Wisconsin (1987) 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709.) At the same time, however, it has insisted that any search or seizure remain strictly tied to the underlying justification as to both motive and scope.
Analogous to probation search conditions, administrative searches are validated in part on the rationale of implied consent. "[W]hen an entrepreneur embarks upon [a pervasively or closely regulated] business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation," including warrantless inspections. (Marshall v. Barlow's, Inc. (1978) 436 U.S. 307, 313, 98 S.Ct. 1816, 56 L.Ed.2d 305; cf. People v. Mason, supra, 5 Cal.3d at p. 765, 97 Cal.Rptr. 302, 488 P.2d 630 [analogizing probation search condition to government contract provision requiring access to accounts and records].) Nevertheless, as the court explained in Michigan v. Clifford (1984) 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477, an administrative search must be justified and circumscribed by its administrative objective. "[T]he scope of the search may be no broader than reasonably necessary to achieve its end." (Id. at pp. 294-295, 104 S.Ct. 641; see New Jersey v. T.L.O. (1985) *106 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720.) "If evidence of criminal activity is discovered during the course of a valid administrative search, it may be seized under the `plain view doctrine. [Citation.] This evidence then may be used to establish probable cause to obtain a criminal search warrant.... [O]fficials may not, however, rely on this evidence to expand the scope of their administrative search without first making a successful showing of probable cause to an independent judicial officer." (Michigan v. Clifford, supra, 464 U.S. at p. 294, 104 S.Ct. 641.)[2]
In Texas v. Brown (1983) 460 U.S. 730, 737-738, 103 S.Ct. 1535, 75 L.Ed.2d 502, the court emphasized this point: "The question whether property in plain view of the police may be seized therefore must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question.... `[P]lain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment." (See Coolidge v. New Hampshire (1971) 403 U.S. 443, 465-468, 91 S.Ct. 2022, 29 L.Ed.2d 564, disapproved on other grounds in Horton v. California (1990) 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112.) That case involved a search at a routine driver's license checkpoint, and the court particularly noted the circumstances gave "no suggestion that the roadblock was a pretext whereby evidence of narcotics violation might be uncovered in `plain view' in the course of a check for driver's licenses." (Texas v. Brown, supra, 460 U.S. at p. 743, 103 S.Ct. 1535; see Florida v. Wells, supra, 495 U.S. at p. 4, 110 S.Ct. 1632 ["an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence"]; New York v. Burger, supra, 482 U.S. at p. 717, fn. 27, 107 S.Ct. 2636 ["no reason to believe that the instant [regulatory] inspection was actually a `pretext' for obtaining evidence of respondent's violation of the penal laws"].)
Concededly in this case, it may be that Wielsch could have searched Loza's residence if, in fact, this was a proper probation search. Had he discovered incriminating evidence against a third party while doing so, it would have been admissible. (See Russi v. Superior Court, supra, 33 Cal.App.3d at pp. 167-168, 108 Cal.Rptr. 716.) However, the possibility his conduct could have been justified does not make it objectively reasonable. The reality is Wielsch acknowledged his only intent was to gather additional evidence against Mofield. The trial court reasonably inferred the officer did not conduct the search for any reason related to Loza's probation and he relied on her search condition solely to avoid seeking a warrant.
The difference between the possibility and the reality is more than metaphysical or semantical; on these facts it assumes a constitutional dimension by allowing law enforcement to utilize search conditions against nonprobationers in much the same manner as the general warrant and writ of assistance that are anathema to Fourth Amendment principles. (Steagald v. United States, supra, 451 U.S. at p. 220, 101 S.Ct. 1642; see New Jersey v. T.L.O., supra, 469 U.S. at p. 335, 105 S.Ct. 733; Marshall v. Barlow's, Inc., supra, 436 U.S. at p. 311, 98 S.Ct. 1816.) Moreover, and contrary to the high court's teachings, it *107 gives law enforcement unfettered discretion to decide whether to utilize a search condition to look for evidence of criminal activity against anyone associated with the person or property of the probationer. (See Brown v. Texas (1979) 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357; cf. Florida v. Wells, supra, 495 U.S. at p. 4, 110 S.Ct. 1632 ["The allowance of the exercise of judgment based on concerns related to the purpose of an inventory search does not violate the Fourth Amendment."]; Colorado v. Bertine, supra, 479 U.S. at p. 375, 107 S.Ct. 738 [inventory search must be conducted "on the basis of something other than suspicion of evidence of criminal activity"].)
Although the United States Supreme Court has not addressed these precise circumstances, numerous federal circuit court decisions have considered the proper justification and scope of a search made ostensibly pursuant to a probation condition. "Unlike an investigation search, a probation search should advance the goals of probation, the overriding aim of which `is to give the [probationer] a chance to further and to demonstrate his rehabilitation while serving a part of his sentence outside the prison walls.' [Citations.] While the warrantless search of a probationer's home need not necessarily be initiated, conducted, or even supervised by a probation officer to qualify as a probation search, it cannot be a mere `subterfuge' enabling the police to avoid having to obtain a search warrant (oftentimes characterized as using probation officers as `stalking horses' for the police). [Citation.]" (U.S. v. Ooley (9th Cir.1997) 116 F.3d 370, 372.) "We have condemned the practice of using a search condition imposed on a probationer as a broad tool for law enforcement. [Citations.] Because the search here clearly was not a genuine attempt to enforce probation but apparently had a motive of avoidance of Fourth Amendment requirements, it is the type of law enforcement that ought to be deterred."[3] (United States v. Merchant (9th Cir.1985) 760 F.2d 963, 969; United States v. Johnson (9th Cir.1983) 722 F.2d 525, 528; see People v. Ramos (1971) 14 Cal.App.3d 642, 649, 92 Cal.Rptr. 614; cf. U.S. v. Huguenin (6th Cir.1998) 154 F.3d 547, 552-555 ["mixed motive" roadblock invalid where actual purpose was to discover narcotics rather than ostensible justification to detect drunken drivers].)
The rationale of Steagald v. United States, supra, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38, is particularly persuasive in this context. In Steagald, agents went to the defendant's house to serve an arrest warrant on a third party they had reason to believe was at that location. Without consent, they entered the house and looked for the subject of the warrant. While doing so, they observed contraband for which they later secured a search warrant. (Id. at pp. 206-207, 101 S.Ct. 1642.) The Supreme Court formulated the issue as "whether an arrest warrantas opposed to a search warrantis adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances" (id. at p. 212, 101 S.Ct. 1642), and concluded it is not. Although the agents could have served the arrest warrant at the subject's home or in a public place, instead "they relied on the warrant as legal authority to enter the home of a third person based on their belief that [the suspect] might be a guest there." (Id. at p. 213, 101 S.Ct. 1642.) Since the situation left protection of the defendant's privacy interest in being free from an invasion and search of his home dependent on "the *108 agent's personal determination of probable cause," it failed to comport with constitutional safeguards. (Ibid.)
"A contrary conclusionthat the police, acting alone and in the absence of exigent circumstances, may decide when there is sufficient justification for searching the home of a third party for the subject of an arrest warrantwould create a significant potential for abuse.... [A]n arrest warrant may serve as the pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place. [Citation.]" (Steagald v. United States, supra, 451 U.S. at p. 215, 101 S.Ct. 1642.) The court noted that the Fourth Amendment "was intended partly to protect against the abuses of the general warrants that had occurred in England and of the writs of assistance used in the Colonies. [Citations.] ... The central objectionable feature of both warrants was that they provided no judicial check on the determination of the executing officials that the evidence available justified an intrusion into any particular home. [Citation.] An arrest warrant, to the extent that it is invoked as authority to enter the homes of third parties, suffers from the same infirmity." (Id. at p. 220, 101 S.Ct. 1642.) No principle of Fourth Amendment jurisprudence places an officer's reliance on a probation search condition solely to search the possessions of third parties on any firmer constitutional ground.
Accordingly, I would affirm the judgment of the Court of Appeal and hold that a police officer may not conduct a general investigatory search of a nonprobationer based upon the probation search condition of another individual.
MOSK, J., and KENNARD, J., concur.
NOTES
[1] Although Zap v. United States, supra, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477, was vacated in 1947, the United States Supreme Court has subsequently relied upon that opinion for the proposition that a consent search is one of the well-settled exceptions to the warrant and probable cause requirements of the Fourth Amendment. (E.g., Texas v. Brown (1983) 460 U.S. 730, 736, 103 S.Ct. 1535, 75 L.Ed.2d 502; Schneckloth v. Bustamonte, supra, 412 U.S. at p. 219, 93 S.Ct. 2041; Katz v. United States, supra, 389 U.S. at p. 358, fn. 22, 88 S.Ct. 507.)
[2] In her answer to the petition for review, defendant Woods requested we consider whether the Fourth Amendment is violated by probation searches that are conducted by police (1) without any authorization by the probation department, and (2) without reasonable cause to suspect a violation of probation. We already have. (Bravo, supra, 43 Cal.3d at p. 609, 238 Cal.Rptr. 282, 738 P.2d 336 [reasonable cause or suspicion unnecessary]; see People v. Mason, supra, 5 Cal.3d 759, 769, 97 Cal.Rptr. 302, 488 P.2d 630 (dis. opn. of Peters, J.) [disagreeing with majority's implicit conclusion that a probationer may validly consent to probation searches by any law enforcement officer].) Defendant offers no persuasive basis for reconsidering our prior conclusions.
[3] Defendants argued to the superior court that the search of the house at 615 West 9th Street was invalid because it extended to areas outside of Loza's control. The court apparently rejected that argument, indicating it would have found the search valid had it been a "proper" probation search.
[4] As described by the court, Wisconsin's probation regime allowed searches of a probationer's home without a warrant "as long as his supervisor approve[d]" and there were "`reasonable grounds' to believe the presence of contraband," including any item prohibited by probation conditions. (Griffin, supra, 483 U.S. at pp. 870-871, 107 S.Ct. 3164.) Under Wisconsin law, the requisite "reasonable grounds" had been conclusively established in the Griffin case by a tip from a police detective that the probationer "had" or "may have had" an illegal weapon at his home. (483 U.S. at p. 875, 107 S.Ct. 3164.)
[5] In California, not all probationers are subject to search clauses. Those who are have agreed to such clauses as a term of their probation. (See In re Tyrell J., supra, 8 Cal.4th at p. 82, 32 Cal.Rptr.2d 33, 876 P.2d 519 [recognizing that an adult offender has the right to refuse probation when its terms appear more onerous than the sentence which might be imposed]; Bravo, supra, 43 Cal.3d at p. 608, 238 Cal.Rptr. 282, 738 P.2d 336 [same].) A criminal defendant need not reject probation and accept incarceration in order to seek review of an allegedly unreasonable or invalid search condition, but a proper objection must be raised at the time of the sentencing hearing. (See People v. Welch (1993) 5 Cal.4th 228, 236-237, 19 Cal.Rptr.2d 520, 851 P.2d 802.)
[6] To clarify, we emphasize "at the very least" because our cases effectively recognize that a search pursuant to a probation search condition may be reasonable and lawful without facts indicating a probation violation (Bravo, supra, 43 Cal.3d 600, 238 Cal.Rptr. 282, 738 P.2d 336), and that an officer's knowledge of the search condition is not a prerequisite to a valid search (In re Tyrell J., supra, 8 Cal.4th 68, 32 Cal.Rptr.2d 33, 876 P.2d 519 [decided in the context of a juvenile probationer] ). In this case, we need only address the factual scenario before us.
[7] To the extent Pipitone, supra, 86 Cal.App.3d 681, 152 Cal.Rptr. 1, is inconsistent with our conclusions in this case, it is hereby disapproved.
[1] Whether the information known to Wielsch would have established probable cause to search is of no moment since, in any event, he could not have searched without a warrant. Whether he could have obtained a warrant is equally beside the point. "Notwithstanding the Court's acceptance of the inevitable discovery doctrine, it makes no sense whatsoever to take the substantially broader step of suggesting that a violation of the Fourth Amendment may be disregarded simply because the police, had they thought about the situation more carefully, could have come up with a lawful means of achieving their desired results." (5 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (3d ed.1996) Exclusionary Rule: Administration, § 11.49(f), p. 306, fn. omitted.)
[2] See also Colorado v. Bertine, supra, 479 U.S. at page 376, 107 S.Ct. 738 (no showing police impounded defendant's van to investigate suspected criminal activity); Donovan v. Dewey (1981) 452 U.S. 594, 600, 101 S.Ct. 2534, 69 L.Ed.2d 262 (warrantless search pursuant to regulatory scheme must be "undertaken for specific purposes"); South Dakota v. Opperman (1976) 428 U.S. 364, 370, footnote 5, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (warrantless routine administrative caretaking functions reasonable, "particularly when no claim is made that the protective procedures are a subterfuge for criminal investigation"); Camara v. Municipal Court (1967) 387 U.S. 523, 537, 87 S.Ct. 1727, 18 L.Ed.2d 930 (warrantless code enforcement inspections valid because not "aimed at the discovery of evidence of crime").
[3] Those federal circuit courts that have decided the issue are unanimous in reaching this conclusion in the context of either probation searches or parole searches. (See U.S. v. McFarland (8th Cir.1997) 116 F.3d 316, 318; U.S. v. McCarty (10th Cir.1996) 82 F.3d 943, 947; U.S. v. Martin (6th Cir.1994) 25 F.3d 293, 296; U.S. v. Coleman (7th Cir.1994) 22 F.3d 126, 129; U.S. v. Hill (3d Cir.1992) 967 F.2d 902, 910-911; U.S. v. Giannetta (1st Cir.1990) 909 F.2d 571, 581; Owens v. Keller (11th Cir. 1982) 681 F.2d 1362, 1369.)