Filed 5/27/14  P. v. Glass CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>KEVIN T. GLASS,<br><br>  Defendant and Appellant. | D063968<br><br><br>(Super. Ct. No. SCD245337) |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed.

Earll M. Pott, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Andrew Mestman and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Kevin Glass was charged with three counts of commercial burglary (Pen. Code, § 459)[1] and one count of possession of methamphetamine (Health & Saf. Code, § 11377). After his motion to suppress evidence under section 1538.5, and a renewed motion to suppress evidence under section 1538.5, subdivision (i), were both denied, he pleaded guilty to one count of commercial burglary pursuant to a plea agreement.

On appeal, Glass argues his motions to suppress should have been granted because a Global Positioning System (GPS) device was placed on codefendant Jeffrey Wellnitz's truck without a warrant, and this search violated Glass's Fourth Amendment rights because Glass was a passenger in, and/or the driver of, Wellnitz's truck during the time the GPS device was attached to it.

I

TRIAL COURT PROCEEDINGS ON MOTION TO SUPPRESS

Glass moved to suppress all evidence obtained as the result of information obtained from the GPS tracking device attached to Wellnitz's truck.

A. Evidence Relevant to Motion to Suppress

The testimony at a preliminary evidentiary hearing, which served as the factual showing for Glass's motion to suppress, showed that in late November or early December 2012, police received two anonymous tips through a "Crime Stoppers" tip line that Wellnitz was involved in thefts of copper in Poway, California. After San Diego Sheriff's detective O'Brian verified Wellnitz was on probation and, as a condition thereof,

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

had agreed to a Fourth Amendment waiver permitting warrantless searches of his vehicle, and after verifying Wellnitz was the registered owner of a Dodge Ram pickup truck (the truck), a sheriff's deputy placed a GPS monitoring device on the truck early in December 2012 without obtaining a warrant. The device would send a text message to O'Brian when the truck was being driven, but would not show the identity of the driver. When alerted, authorities would typically perform a spot check to see who was driving.

On December 20, 2012, O'Brian followed the truck and saw Wellnitz remove materials from a dumpster O'Brian knew was used as a repository for copper recycling from nearby buildings. O'Brian followed the truck when it went to the Carmel Mountain area of San Diego and, after momentarily losing sight of it, found it parked near a business called "NuLite." When Wellnitz drove away, O'Brian directed Deputy Dollick to make a traffic stop of Wellnitz. Dollick made the stop and eventually cited Wellnitz for driving without a license. During the stop, Dollick observed and photographed the contents of the truck bed. There was a tool bag, later identified as belonging to NuLite, in the truck bed.

Two days later, O'Brian went to a building undergoing deconstruction in Rancho Bernardo that was surrounded by a secure fence. He saw Wellnitz's truck in the parking lot and saw Wellnitz climb the fence and return to the truck. Wellnitz backed the truck up to a gate and Glass began handing copper wire over the fence to him. After they finished loading, Glass drove himself and Wellnitz to a recycling center in Poway. O'Brian learned no one had permission to be in the building or to take materials from the

3

building, and an employee told O'Brian that a yellow vest had been taken without permission.

On December 27, the GPS device alerted O'Brian that the truck was again at the building in Rancho Bernardo. O'Brian went to the building and saw Wellnitz back his truck up to the fence. Glass and Wellnitz handed material through the fence and loaded it into the truck. O'Brian later saw Glass drive the truck away from the building.

At 4:45 a.m. the next day, the GPS device again alerted O'Brian that Wellnitz's truck was at the building in Rancho Bernardo. O'Brian arrived about an hour later and saw the truck parked in a parking lot next to the building. Deputy Harrison, who relieved O'Brian to keep watch on the truck, later saw Glass (wearing a construction safety vest) open a gate to allow Wellnitz to drive it inside the fenced area. A short time later, Harrison saw Glass open the gate and the two men left in the truck, with Wellnitz driving. Harrison followed them to a Home Depot, where he saw them stripping wire in the bed of the truck. When they finished, Wellnitz drove the two of them to a recycling center.

On December 30, the GPS device alerted O'Brian that Wellnitz's truck had returned to the building in Rancho Bernardo. O'Brian went to the site and saw Wellnitz's truck inside the fenced area driving eastbound. A deputy stopped the truck, then being driven by Wellnitz, ordered Wellnitz to the ground, and also detained Glass. The back of the truck was filled with wire. O'Brian searched Glass, who had shed a yellow vest he had been wearing, and found drugs along with a key that fit a new padlock used to close a previously made cut in the chain securing the gate.

4

The GPS tracker was removed from the truck at the time of the arrest. Deputies became aware of the presence of the truck at construction sites most of the time because they received the GPS alert.

Glass testified he and Wellnitz were best friends and lived together at a townhome. Glass knew Wellnitz was on probation and had executed a Fourth Amendment waiver. Beginning on December 21, 2012, Glass started driving Wellnitz's truck. On some occasions, Glass drove it without Wellnitz being present but with his permission. Glass did not have a set of keys but instead used Wellnitz's keys to drive the truck.

B. Trial Court Rulings

The court agreed the use of the GPS constituted a search, but denied Glass's motion to suppress evidence because he did not have standing to challenge the search; he had no reasonable expectation of privacy. The court also denied Wellnitz's motion to suppress evidence. Glass and Wellnitz renewed the motion to suppress, pursuant to section 1585.5, subdivision (i), arguing (1) the Fourth Amendment waiver did not grant authorities permission to attach a GPS device to Wellnitz's truck without a warrant or without notice to him; (2) even if Wellnitz's waiver was considered consent to placing a GPS device on the truck, the prolonged use of the device was arbitrary, capricious and harassing conduct; and (3) Glass had standing to challenge the violation of Wellnitz's rights to be free of unreasonable searches. The court found attaching the GPS device to Wellnitz's truck and monitoring it was a search, but the Fourth Amendment waiver constituted implied consent by Wellnitz to the search. The court found that leaving it on the truck for three weeks was not harassment because Wellnitz was not even aware of the

5

monitoring, and it was not arbitrary and capricious because police had legitimate investigatory reasons for the search. The court found Wellnitz had waived his expectation of privacy as to searches of his truck and therefore denied the motion to suppress as to Wellnitz.

The court then considered Glass's claim. The court found he had no possessory or ownership interest in the truck at the time the GPS was placed on it. Glass's only interest in the truck arose when he drove it without Wellnitz being present, but he had no possessory interest in it at all when he accompanied Wellnitz in the truck. Accordingly, on those occasions when Glass and Wellnitz were traveling together, Glass had no protectable interest in the truck itself that could supersede Wellnitz's implied consent to a search of the truck itself, and therefore Glass did not have standing to complain the truck was searched through the GPS monitoring.

II

ANALYSIS

A. Standard of Review

" ' "An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the

6

deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review." ' " (*People v. Ayala* (2000) 23 Cal.4th 225, 255.)

B. Relevant Substantive Framework

The government's installation of a GPS device on a target's vehicle, when coupled with the use of that device to monitor the vehicle's movements, is a search within the meaning of the Fourth Amendment's proscription against unreasonable searches. (*U.S. v. Jones* (2012) ___ U.S. ___ [132 S.Ct. 945, 949, 951 & fn. 5] (*Jones*).) Because installation of a GPS device fell squarely within the traditional common law trespassory test for a search, *Jones* found it unnecessary to decide whether the target also had a reasonable expectation of privacy either in the exterior of the vehicle itself or in the vehicle's locations on the roadways, both of which were visible to anyone, and therefore rejected the government's argument that the search was valid because it did not violate the reasonable expectation of privacy test enunciated in *Katz v. U.S.* (1967) 389 U.S. 347 for whether information gathered by a monitoring device installed without trespass could constitute a "search" under the Fourth Amendment. (*Jones,* at pp. 950-951.)

*Jones* was also careful to explain why two post-*Katz* "beeper" cases, *U.S. v. Knotts* (1983) 460 U.S. 276 and *U.S. v. Karo* (1984) 468 U.S. 705, were consistent with the conclusion in *Jones*. The government argued in *Jones* that, under *Knotts* and *Karo*, installation of a GPS device on a target's vehicle was not a search, and no warrant was

7

required.  (*Jones, supra*, 132 S.Ct. at p. 951.)  In *Knotts*, the court addressed the narrow issue of whether the *monitoring* of beeper signals require a warrant.  (*Knotts*, at p. 285.)  The *Knotts* court concluded that monitoring a beeper placed in a container, which was used to track the movement of a vehicle transporting the container, was not precluded by the Fourth Amendment because the information obtained "amounted principally to the following of an automobile on public streets and highways." (*Id.* at p. 281.)  *Knotts* observed that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another . . . [because] he voluntarily conveyed to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property" (*id*. at pp. 281-282), and reasoned the use of a beeper to obtain the same information did not violate any reasonable expectation of privacy and therefore the monitoring did not require a warrant.  (*Id*. at pp. 282-283.)  *Jones* concluded *Knotts* was correctly decided but was distinguishable because, unlike the facts presented in *Jones*, the owner of the container in *Knotts* had *consented* to the placement of the beeper into the container (and the defendant in *Knotts* did not challenge the installation of the beeper) while the defendant in *Jones* had standing to challenge the trespassory invasion of his property required to install the GPS device.  (*Jones,* at pp. 951-952.)

In *Karo*, the court examined the issue not addressed by *Knotts*: whether monitoring a beeper, installed in a container with the consent of the original owner, constitutes a search or seizure within the meaning of the Fourth Amendment when the

container is delivered to a buyer having no knowledge of the presence of the beeper. (*U.S. v. Karo, supra*, 468 U.S. at p. 707.) As *Jones* recognized, the *Karo* court concluded the target "accepted the container as it came to him, beeper and all, and was therefore not entitled to object to the beeper's presence" (*Jones, supra*, 132 S.Ct. at p. 952), and *Karo* reasoned that because "no Fourth Amendment interest of Karo . . . was infringed by the installation of the beeper . . . any impairment of their privacy interests that may have occurred was occasioned by the monitoring of the beeper." (*Karo,* at p. 713, fn. omitted.) *Karo,* relying on *Knotts*, reasoned that any monitoring of the beeper to track the movements of the automobile merely revealed information that "could have been observed by the naked eye, [and therefore] no Fourth Amendment violation was committed by monitoring the beeper during the [vehicle's] trip to the cabin." (*Karo,* at p. 714.) As *Jones* subsequently confirmed, the court "has to date not deviated from the understanding that mere visual observation does not constitute a search . . . [citation,] [and] [w]e accordingly held in *Knotts* that '[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.' " (*Jones,* at p. 953.)

C. Analysis

We begin by acknowledging that, under *Jones*, placing the GPS device on Wellnitz's truck and using that device to monitor the movements of Wellnitz's truck on public thoroughfares is a "search" within the meaning of the Fourth Amendment. However, Wellnitz *consented* to this search as a condition of his probation, because, as quoted by the trial court, his probation included a Fourth Amendment waiver that

9

required him to " '[s]ubmit [his] . . . vehicle . . . to search at any time, with or without a warrant . . . .' "  Such a waiver has been construed to convey consent to authorities to conduct a warrantless search of a vehicle without notice (*People v. Lilienthal* (1978) 22 Cal.3d 891, 899-900), and Fourth Amendment waivers as conditions to probation have been upheld as a valid consent to warrantless searches.  (*People v. Schmitz* (2012) 55 Cal.4th 909, 917.)  Because of his consent, Wellnitz could not claim a warrant was required to *place* the GPS device on his truck.  Moreover, under *Knotts* and *Karo*, Wellnitz could not complain his Fourth Amendment rights were offended to the extent the GPS device was used to *monitor* the truck's movements over public thoroughfares.

Glass argues that, notwithstanding Wellnitz's Fourth Amendment waiver, the length of the time the GPS device was on the truck, coupled with its round-the-clock monitoring capacity, offended the Fourth Amendment right of a probationer to be free from searches that are arbitrary, capricious, harassing, or undertaken in an unreasonable manner.  (See, e.g., *People v. Woods* (1999) 21 Cal.4th 668, 682.)  As explained in *People v. Clower* (1993) 16 Cal.App.4th 1737, 1741, "a parole search could become constitutionally 'unreasonable' if made too often, or at an unreasonable hour, or if unreasonably prolonged *or for other reasons establishing arbitrary or oppressive conduct* by the searching officer."  However, these observations do not assist Glass, for two reasons.  First, Glass may not assert that his arrest was the result of a violation of Wellnitz's rights (*Rakas v. Illinois* (1978) 439 U.S. 128, 133-134 [Fourth Amendment rights are personal and may not be vicariously asserted]), but must instead prove his arrest was the product of a violation of his own Fourth Amendment rights.  (See *People v.*

10

*Madrid* (1992) 7 Cal.App.4th 1888.) Moreover, even if Glass could raise this argument, the trial court specifically found the monitoring was *not* harassing behavior (because Wellnitz was not even aware of it), and was *not* arbitrary and capricious because police had legitimate investigatory reasons for the search. These factual determinations are supported by the evidence (*People v. Ayala, supra,* 23 Cal.4th at p. 255) and are fatal to any claim that the length and breadth of the search became unreasonable within the meaning of *Woods, supra,* 21 Cal.4th 668 or *Clower, supra,* 16 Cal.App.4th 1737.

Because neither the placement of the GPS device on the truck, nor monitoring its movements, involved a trespassory invasion of Glass's rights to be free of unreasonable searches, Glass must demonstrate that the evidence he sought to suppress was the product of a warrantless search which transgressed his legitimate and reasonable expectations of privacy. However, the evidence Glass sought to suppress was evidence derived solely from monitoring the movements of the truck on occasions when Wellnitz was at least one of the drivers of the truck.[2] As case law makes clear (see, e.g., *People v. Carvajal,*

---

[2]  Glass's motions to suppress below apparently did not seek to suppress *any* evidence that was the product of tracking the truck when Glass was the *sole* driver of it, i.e. when Glass drove the truck without Wellnitz being present. Accordingly, Glass's reliance on *People v. Leonard* (1987) 197 Cal.App.3d 235 and *People v Carvajal* (1988) 202 Cal.App.3d 487 is inapposite. Both *Leonard* and *Carvajal* stand for the proposition that a person who drives a vehicle with the owner's permission has a legitimate expectation of privacy in the vehicle that may be invoked to challenge a search or seizure. (*Carvajal*, at p. 495; *Leonard,* at p. 239.) However, as *Leonard* explained, "the inquiry is not properly one of standing but is 'one involving the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed *by the search and seizure which he seeks to challenge*.' " (*Leonard,* at p. 239, quoting *Rakas v. Illinois, supra*, 439 U.S. 129, 133, italics added.) Because Glass's argument on appeal does not suggest he is challenging any search or seizure *except* to the

11

*supra*, 202 Cal.App.3d at p. 495), Glass may challenge the searches of the truck in which he was either a passenger while Wellnitz drove (e.g., the observations of police on December 30 that resulted in Glass's arrest and the discovery of the contraband and stolen material), or those searches in which both he and Wellnitz alternated the driving responsibilities (e,.g. the observations by police on December 22, December 27 and December 28). In each of those instances, Wellnitz was present, and Glass was accordingly subject to the consent to search the car that arose from Wellnitz's Fourth Amendment waiver. In analogous circumstances, the courts have adopted the "common authority" theory of consent to permit searches of a residence occupied by a probationer who has consented to a Fourth Amendment waiver even though a nonprobationer is also present in the residence. (See *People v. Woods, supra,* 21 Cal.4th at pp. 675, 674-676 [search of residence occupied by probationer with Fourth Amendment waiver valid as against nonprobationer because "[i]t long has been settled that a consent-based search is valid when consent is given by one person with common or superior authority over the area to be searched; the consent of other interested parties is unnecessary"]; *People v. Robles* (2000) 23 Cal.4th 789, 798 [persons residing with probationer maintain normal expectations of privacy over their persons and areas subject to their exclusive access or control but "if persons live with a probationer, common or shared areas of their residence

---

extent he was in the truck while in Wellnitz's company, we need not determine the question of whether a third person who did *not* consent to a probation waiver of Fourth Amendment rights, but who borrowed a car owned by someone who *had* executed such a waiver, would be entitled to suppress evidence that was the fruit of monitoring movements of the truck when the probationer had ceded the truck to the sole use of the third person.

may be searched by officers"].)  Because Wellnitz had "common or superior authority over [the truck] to be searched" (*Woods,* at p. 675) and consented to the search, Glass's challenge to the validity of the search necessarily fails.

## DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.