Filed 6/24/14  P. v. Stephens CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARRIE ANN STEPHENS,<br><br>    Defendant and Appellant. | 2d Crim. No. B248743<br>(Super. Ct. No. 2011032755)<br>(Super. Ct. No. 2011005304)<br>(Ventura County) |

Carrie Ann Stephens appeals her conviction by plea in a consolidated action to possession of methamphetamine (count 1; Health & Saf. Code, § 11377, subd. (a)) and possession of a controlled substance (count 4; Health & Saf. Code, § 11375, subd. (b)(2)).  Pursuant to a negotiated plea, the trial court reduced count 1 to a misdemeanor (Pen. Code, § 17, subd. (b)) and granted probation (Pen. Code, § 1210.1).  Appellant contends that the trial court erred in denying her motion to suppress evidence on count 4 for possession of a controlled substance.  (Pen. Code, § 1538.5.)  We affirm..

*Search of Appellant's Motor Home*

On February 10, 2011, a 911 operator at the Ventura County Sheriff's Department received a call that transients in a motor home were stealing water from a property owner's water spigot.  The caller said that the motor home was cream colored

and parked at the intersection of Crooked Palm Road and North Ventura Avenue in Ventura.

Responding to the call, Deputy Sheriff Dave Johnson knocked on the motor home door to speak to the owner. A woman in her mid 20s, appellant's daughter opened the door and gestured to appellant. Appellant came to the door and said that she owned the motor home. Deputy Johnson explained that he had received a call that someone was stealing water and asked appellant to step outside and talk.

Appellant came out of the motor home. She showed symptoms of methamphetamine use: she was nervous and fidgety and had pick marks on her face. Deputy Johnson asked if appellant was using illegal substances. Appellant was argumentative and said "it had been a couple of years." Deputy Johnson performed a drug abuse recognition evaluation, determined that appellant was under the influence, and again asked if appellant was using drugs. Appellant said that she was "slamming" (injecting) methamphetamine. She consented to a search of the motor home.

It took about an hour to search the motor home because it was cluttered with clothing, boxes, blankets, and dirty dishes. At the foot of the bed, in a first aid kit, Deputy Johnson found nine hypodermic needles, a metal spoon with a white crystal-like substance that resembled methamphetamine, and pills that turned out to be Xanax, hydrocodone and Vicodin.

Appellant was arrested and transported to the police station. Waiving her *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694]), appellant said "I messed up." During the interview, which was taped, appellant admitted using methamphetamine and admitted owning the hypodermic needles and methamphetamine. Appellant said that everything in the first aid kit was hers except the pills. Appellant was asked:

"DJ [Deputy Johnson]: . . .[Y[ou gave me consent to search your motor home, that correct?

"CS [appellant]: That's correct.

2

"DJ: You said it was okay for me to go look. You told me I'm not gonna find anything. Right?

"CS: Correct."

At the hearing on the motion to suppress, appellant claimed that Officer Johnson pulled her out of the motor home and threatened to take her kids if she didn't consent to the search. Edward Torres, appellant's ex-boyfriend, said that he was on a bike trail 50 yards away and saw an officer "snatch" and escort appellant to the side of the motor home. Dino McCullah, appellant's boyfriend, said that he was taking the trash out and saw an officer pull appellant out of the motor home "by her shirt." Appellant "stood out there for a little bit, and then she was in the [patrol] car and off they went. I don't know what was said, but she was out there for a little bit on the side [of the motor home] with one officer." McCullah said that entire incident took about five minutes.

Deputy Johnson testified that it took an hour to search the motor home. Appellant was arrested and transported to the police station after the search was completed.

Sheriff's Deputy Andrew Portillo testified that he was dispatched to the location and saw and heard Deputy Johnson ask appellant to step outside. No one grabbed appellant or threatened to take her children. Deputy Johnson asked for permission to search the motor home and appellant consented to the search. Deputy Portillo stated that appellant's adult daughter was present but no one else. There were no bushes or trees nearby for someone to hide and watch.

The trial court credited the deputies' testimony and found there were "significant" contradictions in McCullah's, Torres', and appellant's testimony. McCullah claimed that appellant was pulled out of the motor home, arrested, and driven away in a patrol car in less than five minutes. Torres and McCullah watched from the bike trail for four or five minutes. Deputy Johnson testified that appellant stepped out of the motor home and consented to the search which took about an hour.

3

Appellant was arrested after the search and, in a taped statement, confirmed that the she consented to the search. The trial court concluded that it was a consensual search. "[W]e have the defendant's own [taped] statements basically completely agreeing with the deputies' version of what happened. . . ."

*Consensual Search*

On review, we defer to the trial court's express and implied factual findings which are supported by substantial evidence and determine whether, on the facts so found, the detention and search were reasonable under the Fourth Amendment. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) It is well settled that a search conducted pursuant to consent "is a constitutionally permissible and wholly legitimate aspect of effective police activity." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 228 [36 L.Ed.2d 854, 863]; *People v. Woods* (1999) 21 Cal.4th 668, 674.) The voluntariness of a consent is a factual question to be decided in light of all the circumstances. (*People v. James* (1977) 19 Cal.3d 99, 106.)

Appellant argues that the search was involuntary because she is a vulnerable middle-aged woman who was "badgered" about her drug use and not *"Mirandized"* before the search. The evidence shows that appellant freely and voluntarily consented to the search. "[S]eizure does not occur simply because a police officer approaches an individual and asks a few questions." (*Florida v. Bostick* (1991) 501 U.S. 429, 434 [115 L.Ed.2d 389, 398]; *In re Manuel G.* (1997) 16 Cal.4th 805, 821; see *People v. Harris* (1986) 184 Cal.App.3d 1319, 1322 [officer may ask driver to exit vehicle without transforming consensual encounter into a detention].)

Deputy Johnson testified that appellant was not pressured, threatened, or coerced. (See *People v. Bower* (2006) 38 Cal.4th 412, 447, fn. 21 [subject's perception of coercion does not support a finding of involuntary consent where there was no coercion].) Appellant consented to the search and told the deputy that he would not find anything. Deputy Johnson was not required to "*Mirandize*" appellant before

4

conducting the search.  Our courts have "consistently h[e]ld that neither the lack of *Miranda*  warnings nor the failure of police officers to inform appellant of h[er] right to refuse can invalidate an otherwise facially voluntary consent by appellant."  (*People v. Ramirez* (1997) 59 Cal.App.4th 1548, 1559, citing *People v. James* (1977) 19 Cal.3d 99, 115.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        YEGAN, J.

We concur:


        GILBERT, P.J.


        PERREN, J.

Patricia M. Murphy, Judge

Superior Court County of Ventura

_____

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. , Supervising Deputy Attorney General, Jessica C. Owen, Deputy Attorney General, for Plaintiff and Respondent.