Filed 5/20/16  P. v. Pena CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEJANDRO PENA,<br><br>    Defendant and Appellant. | C080140<br><br>(Super. Ct. No. 14F05724) |

A jury found defendant Alejandro Pena guilty of knowingly bringing a controlled substance into jail, a felony, and misdemeanor possession of cocaine.  The trial court sentenced him to six years in prison.

Defendant now contends the trial court erred in denying his motion to suppress illegally seized evidence.  (Pen. Code, § 1538.5.)  We find no error in the denial of the motion to suppress.  Defendant also contends the abstract of judgment must be corrected to reflect that his conviction for possession of a controlled substance was a misdemeanor rather than a felony, and that his total sentence was six years.  We agree.

We will affirm the judgment and direct the trial court to correct the abstract of judgment.

1

BACKGROUND

At approximately 3:30 in the morning, Sacramento Police Officer Clayton Whitcomb was patrolling the Oak Park area. He contacted defendant, obtained his identification, and ran a records check. Officer Whitcomb learned defendant had a prior arrest history and asked if he could search defendant for anything illegal. Defendant agreed. In the search, Officer Whitcomb found a baggie containing 0.72 grams of cocaine. Officer Whitcomb arrested defendant and transported him to the county jail. Prior to being searched at the jail, Officer Whitcomb asked if defendant had anything else illegal on him, and defendant said he did not. Deputies found three additional bags of cocaine, with a total weight of over three grams, in a secret pocket in defendant's jeans.

The jury found defendant guilty of knowingly bringing a controlled substance into jail (Pen. Code, § 4573 -- count 1)[1] and misdemeanor possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a) -- count 2). In bifurcated proceedings, the trial court found true allegations that defendant had a prior felony conviction (§§ 667, subds. (b)-(i), 1170.12) and committed the offenses while out on bail (§ 12022.1, subd. (b)). The trial court sentenced defendant to six years in prison, consisting of two years on count 1, doubled for the prior conviction, a consecutive two years for the on-bail enhancement, and a concurrent 90 days for the misdemeanor conviction. (The trial court also imposed various fines and fees.

DISCUSSION

I

Defendant contends the trial court erred in denying his motion to suppress evidence. We disagree.

---

[1] Undesignated statutory references are to the Penal Code.

2

## A

Prior to trial, defendant filed a motion to suppress evidence under section 1538.5. He claimed Officer Whitcomb had unlawfully detained him, it was not a consensual encounter, Officer Whitcomb did not have reasonable suspicion to stop him, and he did not consent to the search. The People argued the encounter was consensual, Officer Whitcomb had probable cause to stop defendant, and defendant consented to the search.

At the suppression hearing, Officer Whitcomb testified he was driving his marked patrol car in the Oak Park area around 3:30 a.m. when he saw defendant riding his skateboard in the middle of the street going in the opposite direction. Officer Whitcomb thought it was suspicious that an individual in this particular residential area was out at 3:30 a.m. He also believed defendant had violated Vehicle Code section 21954, subdivision (a), which provides that pedestrians must yield to vehicles on the roadway. Officer Whitcomb turned his car around and followed defendant.

When Officer Whitcomb got close to defendant, he turned his spotlight on and illuminated him. Defendant stopped on the right side of the road, closer to the curb than the patrol car. Officer Whitcomb did not activate his police lights or siren and did not use the microphone in the vehicle. Officer Whitcomb got out of the patrol car and "engaged [defendant] in casual conversation for quite a while," asking why defendant was out so late, where he was coming from, and whether he had any identification on him. Defendant handed Officer Whitcomb his identification. Officer Whitcomb ran a records check and learned defendant had a criminal history which included a weapons charge. The records check took approximately three minutes. Officer Whitcomb testified this was not a traffic stop, it was a consensual encounter.

Officer Whitcomb asked defendant if he could search him. Defendant said he understood why. Officer Whitcomb had defendant step toward the patrol car and lock his hands behind his head. He asked defendant if he had anything illegal on him and defendant answered he had a folding knife in his pocket, but nothing else. Officer

3

Whitcomb asked if he could check and defendant consented to a search. During the search, Officer Whitcomb found a baggie containing cocaine and placed defendant under arrest.

Defendant testified he yielded to the right side of the road when he heard a vehicle behind him. Officer Whitcomb activated his spotlight, but not his lights, siren, or loudspeaker. Officer Whitcomb did not touch defendant or threaten him and did not draw his weapon. Officer Whitcomb spoke to him through the patrol car window for about 30 seconds to a minute, asked where he was going, and then asked for defendant's identification. Officer Whitcomb had his identification for about a minute, during which time defendant did not feel free to leave, "because when you are speaking to police officers, you got to respect their -- you know. You know you can't -- I never knew you could just walk away from them." He also did not feel comfortable leaving while Officer Whitcomb had his identification. He testified Officer Whitcomb did not ask to search him, but came up behind him and told him to put his hands on his head. Officer Whitcomb asked if he had anything illegal and he answered he had a pocket knife. Officer Whitcomb checked his pocket for the knife then continued to search.

The trial court found this was a consensual encounter without the trappings of a stop, because there was no use of emergency lights or siren and no use of force, but in any event the Vehicle Code violation could establish reasonable suspicion for a stop, in that Officer Whitcomb could in good faith believe the right of way had been violated. The trial court found Officer Whitcomb more credible than defendant and believed defendant had given consent to the search. Accordingly, the trial court denied the motion to suppress.

B

Not every encounter between the police and a citizen is protected by the Fourth Amendment. (*In re Christopher B.* (1990) 219 Cal.App.3d 455, 460.) Police contacts with individuals fall into three broad categories: (1) consensual encounters;

4

(2) detentions; and (3) formal arrests. (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) A consensual encounter requires no objective justification and there is no restraint on a person's liberty. Accordingly, it does not trigger Fourth Amendment scrutiny. (*People v. Bailey* (1985) 176 Cal.App.3d 402, 405.) A detention "involves a seizure of the individual for a limited duration and for limited purposes" and is acceptable " 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' " (*Ibid.*) An arrest also involves a seizure of the person and requires probable cause. (*Ibid.*)

We apply an objective test in determining whether a seizure has occurred. The issue is whether the officer's words and actions conveyed to a reasonable person that he was being ordered to restrict his movement. (*People v. Celis* (2004) 33 Cal.4th 667, 673.) We accept the magistrate's express or implied findings when supported by substantial evidence and determine independently whether the search or seizure was reasonable. (*People v. Woods* (1999) 21 Cal.4th 668, 673-674; *People v. Watkins* (2009) 170 Cal.App.4th 1403, 1408.)

"[T]here is 'no "bright-line" distinction between a consensual encounter and a detention.' " (*People v. Linn* (2015) 241 Cal.App.4th 46, 59.) A " 'consensual encounter between a police officer and a citizen can be transformed into a . . . detention . . . "if, in view of all the circumstances . . . a reasonable person would have believed that he was not free to leave." ' " (*California v. Hodari D.* (1991) 499 U.S. 621, 639 [113 L.Ed.2d 690, 705-706], quoting *United States v. Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509].) "A seizure occurs whenever a police officer 'by means of physical force or show of authority' restrains the liberty of a person to walk away." (*People v. Souza* (1994) 9 Cal.4th 224, 229, quoting *Terry v. Ohio* (1968) 392 U.S. 1, 19, fn. 16 [20 L.Ed.2d 889, 905].) "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the

5

person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." (*Mendenhall,* at p. 554; *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1254.) "[O]ther relevant factors include the time and place of the encounter, whether the police indicated the defendant was suspected of a crime, whether the police retained the defendant's documents, and whether the police exhibited other threatening behavior." (*Linn,* at p. 58.)

"[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' [citation], the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." (*Florida v. Bostick* (1991) 501 U.S. 429, 434 [115 L.Ed.2d 389, 398].) During a consensual encounter, an officer may ask about the contents of a person's pockets, ask for identification, and even ask the person to submit to a search. In determining whether compliance was voluntary, the manner or mode of the request is considered. (*People v. Franklin* (1987) 192 Cal.App.3d 935, 941.)

Relying on cases in which an officer used a spotlight and other cases in which the officer took the defendant's identification and ran a warrants check, defendant argues this encounter became a detention because a reasonable person would have believed that he was not free to leave, to decline the officer's request, or to terminate the encounter. But the use of a spotlight is not sufficient, by itself, to cause a person to believe his freedom of movement has been restrained. (*People v. Perez* (1989) 211 Cal.App.3d 1492, 1496; *People v. Franklin, supra,* 192 Cal.App.3d at pp. 938, 940; *People v. Rico* (1979) 97 Cal.App.3d 124, 128-129, 130.) Nor is taking a defendant's identification and running a records check. (*People v. Bouser* (1994) 26 Cal.App.4th 1280, 1285-1286.) Those are certainly circumstances to be considered in light of all the facts, but given the United States Supreme Court's emphasis that we must "assess the coercive effect of police

6

conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation" (*Michigan v. Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 572]), they do not necessarily transform the encounter from a consensual one to a seizure.

Here, Officer Whitcomb was the only officer on the scene with defendant. He illuminated the area with his spotlight, but he did not use his emergency lights, his siren, or his patrol car loud speaker. He parked behind defendant and did not block his path. He did not draw his weapon or nightstick, and he did not touch defendant. Officer Whitcomb approached defendant and conversationally asked where he was coming from and why he was out so late. Defendant voluntarily answered Officer Whitcomb's questions. Officer Whitcomb was speaking casually with defendant, not commanding a response from him. Officer Whitcomb asked if defendant had any identification on him and defendant voluntarily handed it to Officer Whitcomb. Officer Whitcomb had defendant's identification for about one minute while he ran a records check. Defendant felt he could not leave because people have to respect officers; his feeling was based on his own beliefs, not on Officer Whitcomb's words or actions. According to the trial court's findings of fact, after learning defendant had a criminal history including a weapons charge, Officer Whitcomb asked if he could search defendant and defendant consented. That is, in the space of at most three minutes, defendant voluntarily answered Officer Whitcomb's questions, voluntarily provided his identification, and consented to a search. On these facts, we agree with the magistrate's conclusion that this was a consensual encounter. Because we find this was a consensual encounter, we need not address defendant's other claims regarding the search.

II

Defendant also contends the abstract of judgment must be corrected to reflect that he was convicted of a misdemeanor violation of Health and Safety Code section 11350, subdivision (a), and that his total term is six years, not six years three months. The People agree, and we do too.

Defendant was charged and convicted of a misdemeanor count of Health and Safety Code section 11350, subdivision (a). The trial court imposed a 90-day concurrent term on the misdemeanor. The abstract of judgment incorrectly lists the misdemeanor conviction in the Part 1 listing of felony convictions[2] and identifies the total sentence as six years three months. The abstract must be corrected to reflect the judgment as orally imposed by the trial court. (*People v. Mitchell, supra,* 26 Cal.4th at p. 185.)

DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment by striking the misdemeanor conviction from the Part 1 listing of felony convictions and to correct defendant's total time in Part 8 from six years three months to six years.

                                        /S/
                                        Mauro, J.

We concur:

        /S/
Raye, P. J.

        /S/
Butz, J.

---

[2] The abstract of judgment forms do not have entries for misdemeanor offenses. They do permit entries for "other orders." An entry noting a misdemeanor conviction could apparently be made as an "other order," though such an entry does not appear to be legally required. The ultimate purpose of the abstract of judgment is to act as a synopsis of the trial court's judgment for prison authorities who are responsible for the execution of the defendant's sentence. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *In re Black* (1967) 66 Cal.2d 881, 889-890; *People v. Hong* (1998) 64 Cal.App.4th 1071, 1076.)